**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          *Plaintiff*,<br><br>v.<br><br>STATE OF NEW JERSEY and NEW JERSEY CIVIL SERVICE COMMISSION,<br><br>                          *Defendants*. | Civil No.: 10-0091 (KSH) (CLW)<br><br><br><br>**Opinion** |

**Katharine S. Hayden, U.S.D.J.**

**I.     Introduction**

The United States Department of Justice ("DOJ") sued the State of New Jersey ("New Jersey") and the New Jersey Civil Service Commission ("NJCSC") alleging that the Police Sergeant exam they administered and that guided their promotion selections violated Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000(e), because of a discriminatory impact on African-American and Hispanic candidates.[1] (D.E. 1, "Compl.")  The parties reached a settlement and entered into a consent decree (D.E. 49), approved by the Court, that sets forth remedies for the benefit of individuals who took the discriminatory exam between 2000 and 2008, including priority promotions for those who passed a new exam.  The decree accounted for the preference normally afforded individuals on Special Reemployment Lists ("SRLs") who had been laid off or

---

[1] The Court adopts defendants' party designations and will refer to the plaintiff as the DOJ, and when referencing defendants, will primarily designate the NJCSC because the latter is responsible for developing and administering the Police Sergeant exam.

demoted due to budgetary reasons, by requiring jurisdictions with SRLs to alternate on a one-to-one basis, when promoting candidates to Police Sergeant, between those who retook the exam and were on priority promotion lists and those on SRLs.

The DOJ now brings this motion to modify paragraph 67 of the consent decree arguing that in certain jurisdictions, alternating on a one-to-one basis between the two lists may afford some priority promotion candidates greater than make-whole relief because they would receive a promotion before individuals on an SRL who have earlier actual appointment dates. As set forth below, the motion will be denied.

## II. Background

To understand the reasoning behind the motion, a review of the lawsuit underlying it is required. On June 12, 2012, this Court entered an order approving the consent decree between the DOJ and NJCSC. (D.E. 72.) The consent decree resolved claims brought by the DOJ in its complaint filed on January 1, 2010 under Title VII, claiming that the NJCSC's methods for testing and promoting candidates to the rank of Police Sergeant between 2000 and 2008 had a disparate impact on African-American and Hispanic candidates. (Compl., ¶¶ 1, 24, 25.)

### A. The 2000 to 2008 Examination and Promotion Process

The NJCSC oversees "the selection procedures for promotion to the rank of Police Sergeant" that are used "by hundreds of New Jersey cities and counties that participate in the New Jersey Civil Service system." (*Id.* ¶ 8.) These procedures included a multiple-choice examination that the NJCSC administers and scores. (*Id.* ¶ 9.) The exam results are used in "establishing Police Sergeant eligibility lists and certifying Police Sergeant candidates to" local jurisdictions participating in the civil service system. (*Id.*) The NJCSC sets the "minimum qualifications for admission to the examination" and determines its "pass/fail cutoff score," from which the

participating jurisdictions may not deviate. (*Id.* ¶¶ 9, 10.) Police officers seeking a promotion to Police Sergeant within those jurisdictions must take and pass the multiple-choice examination in order to be considered for promotion. (*Id.* ¶ 10.)

Individuals who pass the examination and satisfy the other qualifications established by the NJCSC are placed on Police Sergeant eligibility lists by jurisdiction. (*Id.* ¶ 11.) The lists rank the candidates in descending ordered based on their examination scores and seniority credits, which are weighted 80% and 20%, respectively. (*Id.*) Local jurisdictions may only promote candidates from a certification list developed by the NJCSC at their request. (*Id.* ¶ 12.) Certification lists are created pursuant to the "Rule of Three" found in N.J.S.A. 11A:4-8 (*id.*), which provides, in relevant part, that:

> The commission shall certify the three eligibles who have received the highest ranking on an open competitive or promotional list against the first provisional or vacancy. For each additional provisional or vacancy against whom a certification is issued at that time, the commission shall certify the next ranked eligible. If more than one eligible has the same score, the tie shall not be broken and they shall have the same rank. If three or more eligibles can be certified as the result of the ranking without resorting to all three highest scores, only those eligibles shall be so certified.

N.J.S.A. 11A:4-8.

The examination administered by the NJCSC from 2000 to 2008 resulted in passing scores for 89% of white candidates, compared to the 73% of African-American candidates and the 77% of Hispanic candidates who passed. (Compl., ¶¶ 14, 16.) The DOJ alleged that African Americans and Hispanics "were under-represented in the higher score ranges and over-represented in the lower score ranges." (*Id.* ¶¶ 19, 21.) The combination of these factors led to 20% of African-American and 22% of Hispanic candidates being certified from the eligibility lists in contrast to the 35% of white candidates certified, and from those certified, 18% of white candidates were promoted compared with 9% of African-American and 13% of Hispanic candidates. (*Id.* ¶ 23.)

The DOJ found these discrepancies to be statistically significant such that it concluded that the "pass/fail use of the NJCSC Police Sergeant written examination" had a disparate impact on African-American and Hispanic candidates and that the pass/fail use of the examination was not "job related for the Police Sergeant position [nor] consistent with business necessity." (*Id.* ¶¶ 24-26.) It therefore claimed that the NJCSC committed unlawful discrimination in violation of Section 707 of Title VII, 24 U.S.C. § 2000e-6. (*Id.* ¶¶ 27, 28.)

      B.      **The Consent Decree**

The DOJ and the NJCSC, after protracted negotiations, settled the action in a consent decree that recited certain facts as the predicate for the relief provided in it. Specifically, "[f]rom 2000 to 2009, African-American and Hispanic candidates passed the police exam at a lower rate than white candidates, and the disparity in pass rates is statistically significant"; "[f]rom 2000 to 2008, African-American and Hispanic candidates ranked lower on the eligible lists than white candidates, and the disparity in ranks is statistically significant"; the disparities in pass rates and rankings were sufficient to establish a *prima facie* case under Title VII; and at least 48 African-American and 20 Hispanic candidates would have received promotions during that time period "absent the disparate impact resulting from the [NJCSC's] pass/fail use of the police sergeant written exam and from the [NJCSC's] determination and use of final scores to certify candidates in descending rank order." (D.E. 49, "Consent Decree" at 2-3.) The consent decree's goals include the development and use of a new, lawful selection process and providing appropriate "promotions with retroactive seniority to qualified persons who were denied a promotion to police sergeant due to" the NJCSC's employment practices. (*Id.* ¶ 12(b), (c).)

Under the consent decree, the DOJ provided a list of all claimants[2] seeking and eligible for priority promotions. (*Id.* ¶ 35.) Each claimant's presumptive appointment date is based on:

the start date that would have been available to Claimant after he or she first:

a. between 2000 and 2009, failed a police sergeant written exam where appointments from the eligible list resulted in a shortfall of his or her race; or

b. between 2000 and 2008, passed a police sergeant written exam where appointments from the eligible list resulted in a shortfall of his or her race, but ranked below the lowest-ranking candidate appointed from that list.

(*Id.* ¶ 9.) This formulation is "based upon the median appointment date for candidates on the eligible list that would have included the claimant or from which the claimant would have been appointed." (*Id.*) The presumptive appointment date is used to calculate a claimant's retroactive seniority, which "refers to the seniority that [the NJCSC] will ensure claimants who are awarded a priority promotion receive." (*Id.* ¶ 10.) The retroactive seniority date only applies "to the calculation of seniority points for purposes of promotion." (*Id.*)

The consent decree requires the NJCSC to "certify eligible claimants for priority promotion over all other eligible candidates until a minimum of, and no more than, 68 offers of priority promotions have been made" to claimants who pass the new selection process. (*Id.* ¶¶ 60, 62.) All

---

[2] The decree defines claimant as:

any African-American or Hispanic person from those jurisdictions [in which candidates are eligible for individual relief] who has not been promoted to sergeant and who:

a. between 2000 and 2009, failed a police sergeant written exam where appointments from the eligible list resulted in a shortfall of his or her race; or

b. between 2000 and 2009, passed a police sergeant written exam where appointments from the eligible list resulted in a shortfall of his or her race, but ranked below the lowest-ranking candidate appointed from that eligible list.

(*Id.* ¶ 3.)

priority promotions are to comply with N.J.A.C. 4A:4-1 through 6-6.6, unless a provision conflicts with the decree, in which case, the decree controls. (*Id.* ¶ 24.) Thirteen jurisdictions identified in Attachment K to the consent decree ("K Jurisdictions") were allocated priority promotions, including Trenton, where three African-American candidates were found to be eligible. (*Id.* ¶ 66; *see also* D.E. 49-11.) Per the consent decree, the NJCSC issues priority promotion lists composed of those claimants who passed the new exam and certifies them "over all other eligible candidates" in K Jurisdictions. (*Id.* ¶ 66.) This process continues until the satisfaction of the priority promotions allocated to K Jurisdictions, or the exhaustion of the group of claimants eligible for priority promotion, whichever last occurs. (*Id.*) Claimants appointed from the priority promotion lists receive "retroactive seniority that corresponds to the claimant's presumptive appointment date." (*Id.* ¶ 76.)

The process for priority promotions differs for K Jurisdictions that maintain SRLs (special re-employment lists), which are comprised of "employees laid off or demoted in lieu of layoff from permanent titles," N.J.S.A. 11A:4-9, and are generally used to fill a vacancy ahead of other promotional lists. *See* N.J.A.C. 4A:8-2.3(b). Individuals are ranked on an SRL based on their "permanent title and seniority at the time of layoff." N.J.A.C. 4A:8-2.3(c)(1). The consent decree harmonizes the preference enjoyed by SRLs by providing that the NJCSC "shall certify Claimants eligible for priority promotions on at least a one to one ratio with candidates on existing special reemployment lists for the next police sergeant positions." (Consent Decree, ¶ 67.)

### C. The DOJ's Motion to Modify the Decree

The DOJ wants to modify paragraph 67 of the consent decree because "[i]n Trenton, alternating between the SRL and the priority promotion list on a one to one basis would cause the relief provided by the Decree to exceed make-whole relief."

According to the argument advanced, if the claimants on Trenton's priority promotion list had been appointed to Police Sergeant "on their presumptive appointment dates in the absence of discrimination some of the Claimants . . . would have been subject to seniority-based demotions and currently would be listed on" Trenton's SRL.  Accordingly, by alternating between the priority promotion list and SRL, a claimant may be appointed to Police Sergeant before an individual on the SRL, despite that claimant having a later presumptive appointment date than the individual's actual appointment date. The DOJ asserts that to ensure that make-whole relief is not exceeded, once the first appointment from Trenton's priority promotion list is made, up to five individuals on the SRL may have to be appointed to Police Sergeant before the third, and final, appointment from the priority promotion list is made.  As a remedy, the DOJ proposes modifying paragraph 67 to add this exception:  "no Claimant shall be appointed before an individual on a special reemployment list whose actual Police Sergeant appointment date is earlier than the Claimant's presumptive appointment date."

The NJCSC opposes the DOJ's motion for three reasons.  First, it contends that application of the proposed modification to Trenton would be "contrary to both civil service law and the Consent Decree" by prohibiting the alternating between the priority promotion list and SRL.  It claims that, due to "the result of the candidate's [sic] test scores and actual or presumptive promotion dates," the proposed modification requires them to appoint specific priority promotion candidates for the first and third Police Sergeant vacancies that occur in Trenton.  The following

are the claimants on Trenton's priority promotion list according to the declaration of Kenneth Connolly, the NJCSC's Director of the Division of Classification and Personnel Management. (D.E. 94-1, "Connolly Dec.")

| Priority List Rank | Claimant Name | Presumptive Appointment Date | Score |
|---|---|---|---|
| 1 | Candidate A[3] | May 13, 2004 | 83.940 |
| 2 | Candidate B | April 3, 2009 | 80.910 |
| 3 | Candidate C | April 3, 2009 | 80.710 |
| 4 | Candidate D | May 13, 2004 | 79.210 |
| 5 | Candidate E | April 3, 2009 | 74.250 |

(*Id.* at 6.) Trenton's SRL includes five individuals with actual appointment dates that are relevant to the current motion.

| SRL Position | Name | Actual Appointment Date |
|---|---|---|
| 1 | JEC | May 30, 2007 |
| 2 | JR | May 30, 2007 |
| 3 | MFR | May 30, 2007 |
| 4 | CK | May 30, 2007 |
| 5 | JPW | May 30, 2007 |

(*Id.* at 5.)

The NJCSC claims that when the proposed modification and the Rule of Three operate concurrently, Candidate A must be appointed to the first available Police Sergeant position. (*Id.* ¶ 18.) The Rule of Three requires it to certify the top three scoring candidates, Candidates A, B, and C, and while Trenton could normally select which candidate to appoint from among those three, the modification would prevent it from doing so by limiting the decision to candidates with earlier presumptive appointment dates than the actual appointment dates of individuals on Trenton's SRL. As a consequence, only Candidate A qualifies. (*Id.* ¶ 18.) The NJCSC asserts that similar constraints apply in appointing a priority promotion candidate to the third available Police Sergeant

---

[3] Aliases and initials are used to protect the identities of claimants and individuals on Trenton's promotional lists.

position, after appointing the first ranked person on the SRL to the second Police Sergeant vacancy. (*Id.* ¶¶ 19-20.) The Rule of Three requires it to certify Candidates B, C, and D as the remaining three highest exam scorers, but per the Consent Decree, Trenton must appoint Candidate D, despite having the lowest score, because he or she is the only claimant with a presumptive appointment date before the actual appointment date of the person ranked second on Trenton's SRL. (*Id.* ¶ 20.) Then, after appointing the remaining individuals on the SRL with actual appointment dates of May 30, 2007, the NJCSC alleges that it could then appoint one of the remaining three claimants, Candidate B, C, or E, to the final priority promotion position allocated to Trenton. The effect that the DOJ's proposed modification would have on the order of Police Sergeant appointments is summarized in the chart below.

| Order of Appointments with Proposed Modification | Rank on SRL or Priority Promotion List | List from Where Appointment is Made | Actual Appointment Date or Presumptive Appointment Date | Score on Test if Priority Promotion Candidate |
|---|---|---|---|---|
| Candidate A | 1-PP[4] | Priority Promotion | May 13, 2004 | 83.940 |
| SRL Rank 1 | 1-SRL | SRL | May 30, 2007 | N/A |
| Candidate D | 4-PP | Priority Promotion | May 13, 2004 | 79.201 |
| SRL Rank 2 | 2-SRL | SRL | May 30, 2007 | N/A |
| SRL Rank 3 | 3-SRL | SRL | May 30, 2007 | N/A |
| SRL Rank 4 | 4-SRL | SRL | May 30, 2007 | N/A |
| SRL Rank 5 | 5-SRL | SRL | May 30, 2007 | N/A |
| Candidate B or Candidate C or Candidate E | 2-PP 3-PP 5-PP | Priority Promotion | April 3, 2009 April 3, 2009 April 3, 2009 | 80.910 80.710 74.250 |

---

[4] PP stands for priority promotion.

The second reason advanced by the NJCSC is that the proposed modification would result in passing over candidates with higher test scores on the priority promotion list. Third, the NJCSC asserts that the modification precludes it from using the Rule of Three because fewer than three candidates on the priority promotion list have presumptive appointment dates before the candidates' actual appointment dates on the SRL who are entitled to the second and fourth Police Sergeant positions, and so it prevents it from certifying three candidates for the first and third available Police Sergeant positions.

## III.     Discussion

### A.     Modification Under Fed. R. Civ. P. 60(b)(6)

Parties entering into a consent decree "make a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 201 (3d Cir. 2012). It may be modified when, among other considerations, "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).[5] Under Fed. R. Civ. P. 60(b)(5), the burden rests on the party seeking the modification to establish "that a significant change in circumstances warrants a revision of the decree." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992). If that party carries its burden, the court must then "consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 383. The court "has broad equitable power to fashion a remedy while modifying a decree" or enforcing the decree if its goal is to remedy discrimination. *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 282 (3d Cir. 2001).

---

[5] Although not citing Fed. R. Civ. P. 60(b)(5) as the basis for the decree's modification, the Court assumes that the DOJ intended to bring its motion under the Rule because its arguments assert that it would be inequitable to continue to enforce the decree as worded in Trenton.

The presence of significant changed circumstances must be shown by a preponderance of the evidence and can include: "(1) a significant change in factual conditions; (2) a significant change in law; (3) that 'a decree proves to be unworkable because of unforeseen obstacles'; or (4) that 'enforcement of the decree without modification would be detrimental to the public interest.'" *Democratic Nat'l Comm.*, 673 F.3d at 202 (quoting *Rufo*, 502 U.S. at 384). Although, a court should not normally modify a decree where the moving party cites circumstances "that actually were anticipated at the time it entered into the decree." *Rufo*, 502 U.S. at 385; *see also Agostini v. Felton*¸ 521 U.S. 203, 216-17 (1997) (refusing to modify a consent decree because the defendant anticipated additional costs would be incurred when the consent decree was entered). The party seeking to modify the decree in light of an anticipated change in circumstances must carry the "heavy burden" of convincing "a court that it agreed to the decree in good faith, made a reasonable effort to comply with the decree, and should be relieved of that undertaking under Rule 60(b)." *Rufo*, 502 U.S. at 385.

In this Circuit, a court should also "respond to the specific set of circumstances before it by considering factors unique to the conditions of the case," *Democratic Nat'l Comm.*, 673 F.3d at 202, which may consist of:

> the circumstances leading to entry of the injunction and the nature of the conduct sought to be prevented; the length of time since entry of the injunction; whether the party subject to its terms has complied or attempted to comply in good faith with the injunction; and the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction.

*Bldg. & Constr. Trades Council of Phila. & Vicinity v. N.L.R.B.*, 64 F.3d 880, 888 (3d Cir. 1995). The factors must be weighed, evaluating the hardship suffered by the party enjoined by the decree against the benefits derived from its maintenance, and "the court should also 'determine whether the objective of the decree has been achieved.'" *Democratic Nat'l Comm.*, 673 F.3d at 202

(quoting *Bldg. & Constr. Trades Council*, 64 F.3d at 888). Paramount in the court's analysis remains whether unforeseen circumstances have made compliance "more onerous," "have made the decree unworkable," or "whether continued enforcement would be detrimental to the public interest." *Bldg. & Constr. Trades Council*, 64 F.3d at 888.

### B.    The DOJ's Alleged Change in Factual Circumstances

The DOJ's main premise for modifying the consent decree is that not doing so would afford some claimants more than make-whole relief. This looks too narrowly at the consequences the modification will have on SRL candidates and fails to consider the effects the modification will have on claimants.

The modification's consequences are twofold: first, it affords Candidates A and D greater than make-whole relief, and second, it diminishes the relief to Candidates B and C to less than make whole. Candidates A and D will receive greater than make-whole relief under the modification by virtue of being the only two among the claimants with presumptive appointment dates earlier than the SRL candidates' actual appointment dates, which creates an automatic entitlement for Candidate A to the first available Police Sergeant position and for Candidate D to the third vacancy. The NJCSC may only certify Candidate A for the first position when the Rule of Three and modification operate concurrently because he or she is the only claimant who scored in the top three on the exam with a presumptive appointment date earlier than the SRL candidates' actual appointment dates. The NJCSC is similarly constrained in certifying Candidate D for the third Police Sergeant position because, after Candidate A is appointed to the first position, Candidate D, who could then be certified as one of the three remaining highest exam scorers on the priority promotion list, is the only remaining claimant with a presumptive appointment date earlier than the May 30, 2007 actual appointment date of the four remaining highest ranked SRL

candidates. If the decree is applied without the modification, Candidates A and D would face competition for those positions because the NJCSC would be able to certify the other two highest scoring candidates, and Trenton could then promote one from among those three to Police Sergeant. Because Candidates A and D will automatically receive a promotion under the modified decree, they would receive more than make-whole relief.

At the same time, the modification diminishes Candidates B and C's relief by precluding the NJCSC from certifying them for the first and third available Police Sergeant positions, despite their having scored second and third highest on the exam respectively. The NJCSC, when certifying candidates for the first and third positions, would normally be required to include Candidates B and C under the Rule of Three, *see* N.J.S.A. 11A:4-8, but because their presumptive appointment dates fall after the May 30, 2007 actual appointment date of the highest ranked candidates on Trenton's SRL, they could not be promoted under the modified decree and would only be able to be considered for the third, and final, Police Sergeant position allocated to the claimants on Trenton's priority promotion list. This constitutes less than make-whole relief because under the consent decree, Candidates B and C would have more opportunities to receive an appointment having scored second and third highest on the exam.

The NJCSC also contends that the Court should deny the DOJ's motion to modify the consent decree because DOJ anticipated that there was a possibility that a claimant could be promoted to Police Sergeant before an SRL candidate with an earlier actual appointment date than the claimant's presumptive appointment date.

> Varda Hussain, a government attorney, stated at the fairness hearing that:
>
> On the off chance that a priority promotion candidate's presumptive appointment date would have landed him or her on the special reemployment list, by virtue of the fact that he or she would have been demoted along with a colleague, in that case the United States would carefully review the set appointment date at a time the

> promotion occurred to make sure that the presumptive appointment date is not higher than one would expect, given that there were demotions. The parties intended that no provision in this decree exceeded make-whole relief and if a scenario in which the relief may exceed to [sic] make-whole relief arises, the parties would bring this issue to the Court's attention and propose a modification to the decree.

(D.E. 69, "Mar. 12, 2012 Fairness Hearing Tr.," 45-46.) The DOJ thus knew that in jurisdictions maintaining both an SRL and priority promotion list that, when alternating on a one-to-one basis, a claimant may come up for promotion before an individual on the SRL, even though the individual had an earlier actual appointment date than the claimant's presumptive appointment.

The DOJ argues that not until claimants passed the new exam, priority promotion lists were created, and the claimants' presumptive appointment dates were compared could the present circumstances have been manifest. In short, the argument is that it was impossible at the time the consent decree was written "to determine whether changes to the Decree would be necessary or whether the issue would be moot." But the record establishes that the DOJ *foresaw* the issue and could have included the modification language it argues for now. *See United States v. Asarco Inc.*, 430 F.3d 972, 982-84 (9th Cir. 2005) (refusing to modify a consent decree because the defendant was aware that circumstances could change and could therefore have incorporated a provision in the decree addressing the factual possibility); *United States v. Bishop Processing Co.*, 423 F.2d 469, 472 (4th Cir. 1970) (stating that the defendant had the opportunity to incorporate any terms in the consent decree to address foreseeable circumstances and could not later seek to revise the decree to include that language). The fact that the modification language might never have been needed is of no moment; it could have sat dormant without affecting the rest of the decree.

The DOJ alternatively contends that whether or not these factual circumstances were anticipated is irrelevant because, at the fairness hearing, the NJCSC "assented that the Parties would seek modification of the Decree if necessary to ensure that a Claimant would not be

promoted before a candidate on an SRL" who had an earlier actual appointment date than the claimant's presumptive employment date. When the DOJ forwarded this proposition at the fairness hearing, the representatives for the NJCSC remained silent. The Court will not take its silence as acceptance of any and all future modifications because, as the DOJ notes, "the Parties did not agree to the specific terms of such a modification" at the time, and the NJCSC may have agreed to modify the decree with different language than that proposed.

The DOJ also claims that it would be inequitable and detrimental to public interest to continue to allow the promotions to alternate on a one-to-one basis between Trenton's SRL and priority promotion list because it would afford priority promotion candidates more than make-whole relief by allowing them to leap over individuals with an earlier actual promotion than their presumptive appointment date. The heart of the argument is that without the modification the decree upsets the preference normally afforded those with seniority on the SRLs.

One of Title VII's purposes is to afford make-whole relief to persons suffering injuries caused by unlawful employment discrimination. *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). The Act requires that victims of these discriminatory practices to "be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination." *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 764 (1976); *see also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 372 (1977). That relief should not put the aggrieved "in a substantially better position then [sic] they would have occupied." *United States v. City of Miami*, 195 F.3d 1292, 1301 (11th Cir. 1999); *see also Dogherty v. Barry*, 869 F.2d 605, 614-15 (D.C. Cir. 1989) (finding that the district court erred by granting two plaintiffs full compensation instead of a pro rata share when only one would have received a promotion).

But the fact that Title VII relief "diminishes nonminority expectations . . . should not prevent awards . . . to the victims of discrimination." *Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 287 (2d. Cir. 1981). For instance, seniority rights "may be modified by statutes furthering a strong public interest" such as Title VII, *Franks*, 424 U.S. at 778, and a court should not deny or alter discrimination victims' relief "on the abstract basis of adverse impact upon interest of other employees but rather only on the basis of an *unusual* adverse impact arising from facts and circumstances that would not generally be found in Title VII cases." *Id.* at 780 n. 41 (emphasis added). The importance of "eradicating racial discrimination" may require innocent individuals "to bear some of the burden of the remedy," especially "[i]n cases involving valid *hiring* goals." *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 280-81 (1986); *see also Tangren v. Wackenhut Servs., Inc.*, 658 F.2d 705, 706 (9th Cir. 1981) (holding that seniority rights in a collective bargaining agreement can be altered to the detriment of employees, especially when done to ensure greater representation of minorities). Therefore, those individuals on the SRLs must bear some of the burden of remedying the discrimination and a delay in reappointment alone is not a sufficient reason to modify the decree.

The public's interest in continuing to permit the NJCSC and the K Jurisdictions to exercise the discretion afforded by the Rule of Three must also be considered. "[C]onsiderations based on the allocation of powers within our federal system" requires "defer[ence] to local government administrators, who have the 'primary responsibility for elucidating, assessing, and solving' the problems of institutional reform." *Rufo*, 502 U.S. at 392 (citation and internal quotation marks omitted) (quoting *Brown v. Bd. of Educ.*, 349 U.S. 294, 299 (1955)). Removing all discretion in selecting which claimant to promote to the first and third Police Sergeant vacancies ignores the expertise that the NJCSC and the K Jurisdictions possess in deciding who is the most qualified.

*See In re Foglio*, 207 N.J. 38, 46 (2011) (citation and internal quotation marks omitted) ("[T]he Rule of Three does not stand as an immutable or total bar to the application of other important criteria by a government employer."). Modifying the decree will nullify this discretion. The DOJ has failed to cite a detriment to the public interest sufficient to modify the decree that would overcome the public interest of eliminating discrimination and the deference that must be given to the NJCSC and K Jurisdictions as the entities carrying out the decree.[6]

The decree as originally approved, while not perfect, struck the appropriate balance between claimants' interests in obtaining make-whole relief and the SRL candidates' entitlement to a reappointment. It also accounted for the interests of the K Jurisdictions by allowing them to retain discretion in promoting the most qualified claimant to Police Sergeant from the group of three that the NJCSC certifies pursuant to the Rule of Three. The decree, absent the modification, may create a disadvantage for some individuals on Trenton's SRL by delaying their reappointment, but such "innocent persons . . . may be called upon to bear some of the burden" in remedying racial discrimination under Title VII. *Wygant*, 476 U.S. at 280-81. The DOJ's motion to modify the consent decree is denied.

---

[6] The DOJ correctly notes that when a conflict arises between the consent decree and New Jersey statutes and regulations the consent decree controls because "consent decrees displace state law to the same extent as do judgments on the merits." *State of N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc.*, Nos. 84-0152, 92-3860, 2005 WL 1129763, at *12 (D.N.J. May 11, 2005) (Simandle, J.) (quoting *United States v. AT&T*, 552 F. Supp. 131, 155 n.102 (D.D.C. 1982)) (internal quotation marks omitted). Nevertheless, the Court finds that equity demands that the DOJ's modification be denied because, among other reasons, of the importance that the discretion embodied in the Rule of Three has on the Police Sergeant appointment process.

**IV.     Conclusion**

For the foregoing reasons, the DOJ's motion to modify the consent decree is denied. An appropriate order will be entered.

|  |  |
|---|---|
| Dated:  September 30, 2015 | /s/ Katharine S. Hayden_____<br>Katharine S. Hayden, U.S.D.J. |